Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Eastern District of New York

1:20-cv-00711

Monique Salerno, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Complaint

The Coca-Cola Company,

Defendant

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. The Coca-Cola Company ("defendant") manufactures, distributes, markets, labels and sells iced tea beverages purporting to be low in sugar under the Gold Peak brand ("Products").

2. The Products are available to consumers from retail and online stores of third-parties and are sold in bottles in sizes including 18.5 OZ (547 ML).

3. The relevant front label statements include "Slightly Sweet," "Tea" and "Sweetened with 50% less sugar than our original sweet tea" and "90 Calories Per Bottle."



4. The representations are misleading because though being represented as low in sugar, they actually contain objectively high amounts of sugar, as added sugar.

I. Increasing Consumer Avoidance of Sugar and Sweetened Food and Beverages

5. In 2014, the National Institutes of Health cautioned: "experts agree that Americans

eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[1]

6. The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[2]

7. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[3]

8. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

9. At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

10. In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

11. As another observer of the food industry explained in May 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories…Sugar reduction will be one of the top marketing claims prominently

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[2] *Id.*
[3] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[4] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[5] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.

featured on products in the coming year…"[6]

12. Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

13. The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[8]

II. Nutrition Authorities Promote Limited Consumption of Added Sugars

14. The 2015-2020 Dietary Guidelines for Americans ("DGA") recommended that added sugar make up no more than 10 percent of all calories consumed per day.[9]

15. Based on an average of 2,000 calories per day, this means the maximum daily amount of added sugars should not exceed 200 calories or 50 grams of sugar.

16. The FDA adopted the daily value (DV) of added sugar determined by the DGA and "concluded that there is strong and consistent evidence that healthy dietary patterns characterized, in part, by lower intakes of sugar sweetened foods and beverages relative to less healthy patterns, are associated with a reduced risk of CVD (Cardiovascular disease)."[10]

17. To promote the consumption of less sugar, the FDA instituted a requirement that added sugars be displayed with a percent daily value (DV) in a food so consumers would be aware

---

[6] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[7] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[8] *Id*.
[9] 2 U.S. Health & Human Servs., U.S. Dept. of Agriculture, *Dietary Guidelines for Americans 2015-2020*, 8th Ed. (Dec. 2015).
[10] Center for Science in Public Interest, Letter to FDA Requesting Enforcement Action on Unauthorized Low Sugar Claims, January 9, 2020.

of and limit its consumption.

III.     Implied Nutrient Content Claims of "Low Sugar" are Prohibited and Can Be Misleading

18.    Low sugar products are generally marketed towards consumers seeking products that are useful in "weight control," through consumption of fewer calories. *See* N. J. Patterson et al., "*Consumer understanding of sugar claims on food and drink products*," Nutrition bulletin, 37.2 (2012): 121-130 ("In focus groups, participants felt deceived if sugar reduction claims were being made without a significant reduction in calories.").

19.    Representations that characterize the level of a nutrient are specifically limited and can only be made in accordance with an authorizing regulation. 21 U.S.C. § 343(r)(2)(A); *see* 21 C.F.R. § 101.13 ("general principles"); *see also* 21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

20.    Nutrient content claims for sugar were originally in a section of regulations for "dietary foods" as 21 C.F.R. § 105.66 originally included "terms such as low calorie, 'reduced calorie,' and 'sugar free,' which were thought to be useful attributes of a food in the maintenance or reduction of body weight." 56 Fed. Reg. 229, 60421 at 60457, Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms (Nov. 7, 1991) (21 CFR Parts 5, 101, and 105); FDA, *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims*, Sept. 2007 ("FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly.").

21.    As "maintaining a healthy body weight became more scientifically supported and accepted as public health and individual goals, it was no longer accurate that they [lower and reduced sugar foods] be described in connection with "special dietary uses." 56 Fed. Reg. 229,

60421 at 60457 (“Consequently, the agency is proposing to place requirements for terms such as "low" and "reduced calorie," comparative claims, and sugar claims, originally provided for in § 105.66, in § 101.60”).

22. The purpose of nutrient content claims for sugar is to prevent consumers from being misled as to a product’s sugar content. 21 C.F.R. § 101.60(c)(1).

23. These regulations set the boundaries of when “[A] claim about the calorie or sugar content of a food may [only] be made on the label.” 21 C.F.R. § 101.60(a).

24. The FDA has authorized claims for the absence of sugar and calories (“no sugar,” “calorie free”) and relative amount of calories and sugar (“fewer calories,” “less sugar”), but not “low sugar.”

| | Calorie Claims[11] | Sugar Claims[12] |
|---|---|---|
| Absence | No Calories | No Sugar |
| Relative | Fewer Calories | Less Sugar |
| Low | Low Calories | X |

25. Because “low sugar” claims have never been authorized, they are prohibited. 58 Fed. Reg. 2302, 2368 (“The agency stated that under the provisions of the statute, such implied claims are prohibited until they are defined by FDA by regulation.”).

26. The FDA has issued warning letters to companies making “low sugar” claims:

> The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar." While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used…”)

FDA Warning Letter to CK Management, Inc., May 19, 2015

[11] 21 C.F.R. § 101.60(b)
[12] 21 C.F.R. § 101.60(c)

IV. Products Make Misleading Sugar Claims

27. When consumers observe the Products' front-label representations which highlight the "Slightly Sweetened" claim, they will reasonably believe the Products are lower in sugar and added sugar than they are.

28. However, the Nutrition Facts reveal the Products contain 24 grams of sugar, which is entirely added sugar.

| Nutrition Facts | |
|---|---|
| 1 Serving Per Container | |
| **Serving Size** | **1 Bottle** |
| **Amount Per Serving** | |
| **Calories** | **90** |
| | **% Daily Value** |
| **Total Fat** 0g | **0%** |
| **Sodium** 40mg | **2%** |
| **Total Carbohydrate** 24g | **9%** |
| Total Sugars 24g | |
| Includes 24g Added Sugars | **47%** |
| Cholesterol 0mg | **0%** |
| **Protein** 0g | |

29. Far from being "slightly sweetened" and low in sugar, sugar is the second most predominant ingredient in the Product by weight.

TEA (FILTERED WATER, BREWED TEA CONCENTRATE), SUGAR, NATURAL FLAVORS, CARAMEL COLOR, PHOSPHORIC ACID.

TEA (FILTERED WATER, BREWED TEA CONCENTRATE), SUGAR, NATURAL FLAVORS, CARAMEL COLOR, PHOSPHORIC ACID.

30. Consumption of the Products provides 47 percent of the daily value for added sugars even though they contain only 90 calories.

31. This leaves the average person who wishes to follow the DGA to consume no more than 26 grams of sugar across 1,910 calories (2,000 calories – 90 calories).

32. It will be difficult to impossible for the average, reasonable consumer to not consume more than 26 grams of sugar in everything else they eat or drink because many foods and beverages have added sugars, albeit in much smaller amounts than the Products.

33. Given that most Americans have limited numeracy skills, it is not feasible to ensure no more than 26 grams of sugar are consumed, because this would entail detailed calculations after each food to see how many calories and added grams of sugar they should take in.

34. To represent a product as "slightly sweetened" that contains almost half of recommended daily added sugar intake poses "a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes.[13]

35. The front label statements other than "Slightly Sweetened" "Sweetened with 50% Less Sugar Than Our Sweet Tea*" and "90 Calories Per Bottle" – fail to cure the misleading message consumers get.

36. Merely because the Products contain "less sugar" than other tea products of the same brand does not mean they are "low sugar" as understood based on the "slightly sweetened" claim.

37. Even if the Products are authorized to make a relative sugar claim, it is still

[13] CSPI Letter, *supra* citing FDA.

misleading to do so since a relative claim fails to disclose material facts about the overall sugar and added sugar.

38. No requirement exists to compel the Products to represent or allude to their sugar content through the term "Slightly Sweetened" on the front label, as opposed to the requirement it be present in the Nutrition Facts, so added sugar can be viewed next to the percent DV.

39. Moreover, the disclosure of calories for the bottle on the front does not tell consumers how much of those calories are from added sugars, which would be all of them.

40. Because the Products are promoted as "slightly sweetened" ("low sugar") and not "no sugar" or "sugar free," it falls outside of claims considered by the relevant authorities.

V. Conclusion

41. Defendant's branding and packaging of the Products are designed to – and do – deceive, mislead, and defraud consumers.

42. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

43. Defendant's false, deceptive, and misleading branding and packaging of the Product has enabled defendant to sell more of the Product and at higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

44. The value of the Product that plaintiff actually purchased and consumed was materially less than its value as represented by defendant.

45. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

46. The Product contains other representations which are misleading and deceptive.

47. As a result of the false and misleading labeling, the Product is sold at a premium

price, approximately no less than $2.99 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

VI. Conclusion

48. Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers.

49. Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

50. The amount of sugar or other caloric sweetening ingredients has a material bearing on price or consumer acceptance of the Products because their absence causes consumers to pay more for such Products.

51. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

52. Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for it.

53. The Product contains other representations which are misleading and deceptive.

54. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.99 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

55. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

56. Under CAFA, district courts have "original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

57. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

58. Plaintiff is a citizen of New York.

59. Defendant is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia and is a citizen of Georgia.

60. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

61. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

62. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

63. Plaintiff is a citizen of Flushing, Queens County, New York.

64. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Georgia, Fulton County.

65. During the relevant statutes of limitations, plaintiff purchased the Product within this district and/or State for personal consumption in reliance on the representations.

## Class Allegations

66. The classes will consist of all purchasers of the Products in New York, the other 49 states and a nationwide class where applicable, during the applicable statutes of limitations.

67. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

68. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

69. Plaintiff is an adequate representative because her interests do not conflict with other members.

70. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

71. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

72. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

73. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

74. Plaintiff incorporates by reference all preceding paragraphs.

75. Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

76. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

77. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary

Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

78. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

81. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

82. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

83. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

84. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

85. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

86. Plaintiff incorporates by reference all preceding paragraphs.

87. Defendant manufactures and sells Products that give the impression they are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

88. The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

89. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

90. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

91. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

92. Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

93. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

94. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

95. Plaintiff incorporates by references all preceding paragraphs.

96. Defendant represented the Products are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

97. Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label.

98. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

99. Plaintiff incorporates by reference all preceding paragraphs.

100. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant

to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: February 8, 2020

                                        Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

1:20-cv-00711
United States District Court
Eastern District of New York

Monique Salerno, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Coca-Cola Company,

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: February 8, 2020

/s/ Spencer Sheehan
Spencer Sheehan